MYRON SHATTUCK v. JOHN COLE AND CHARLES H. LOOMIS.

*Chattel mortgage—Seizure by mortgagee under insecurity clause—Tender.*

1. Where a mortgagor of chattels has difficulty in ascertaining under what claim the holders of the mortgages are holding the property, they having first caused it to be seized on execution, it is a question for the jury whether they are acting in good faith, and entitled, upon redemption, to exact their costs of seizure.

2. There can be no doubt of the mortgagor's right to redeem upon paying what the mortgagee would be entitled to realize and retain on a sale of the property.

3. Under a chattel mortgage which authorizes, in default of payment, the sale of the property at public or private sale to satisfy the debt, interest, and reasonable expenses, and the seizure of the property at any time when the mortgagee shall deem himself insecure, and its disposition "in the manner above

specified," a tender of the principal, with interest to date and accrued costs, the mortgagee having seized the property under the insecurity clause, discharges the property from the lien of the mortgage, and renders its further detention illegal.

Error to Kent. (Adsit, J.) Argued March 11, 1892. Decided May 13, 1892.

Replevin. Defendants bring error. Affirmed. The facts are stated in the opinion.

*Henry J. Felker,* for appellants, contended:

1. A tender, in order to be good, must be made of the full amount owing and of the entire costs, and by a party who is interested in the matter, and at the right time and place, and the party to whom made must be given an opportunity to ascertain his rights and the exact amount that may be owing him, and of any costs made in the matter; citing *Potts v. Plaisted,* 30 Mich. 149; *Proctor v. Robinson,* 35 Id. 284; *Root v. Bradley,* 49 Id. 27; *Post v. Springsted,* Id. 90; *Noyes v. Wyckoff,* 114 N. Y. 204.

2. Where the mortgagee deems himself insecure, and takes possession under the insecurity clause, he has no right to sell the property until the mortgage is due; citing *Eslow v. Mitchell,* 26 Mich. 500; *Brink v. Freoff,* 40 Id. 610, 44 Id. 69.

*C. O. Smedley,* for plaintiff.

MONTGOMERY, J. This is an action of replevin for a team of horses, wagon, and harness.

On the 13th of December, 1890, the defendants had taken possession of the property, the defendant Loomis and one Lull being the assignees of two chattel mortgages executed by plaintiff,—one for the sum of $75, due 11 months from November 13, 1890, with interest at 10 per cent. per annum; and the other for the sum of $45, due 11 months from November 20, 1890, with interest at the rate of 10 per cent. per annum. Cole was an agent of Loomis and Lull. One Anderson held a third mortgage, covering the same property, and on the 13th of December he

made a tender to the defendants, and asked for an assignment of the two mortgages. This was refused, and a few days later he made a tender, without reserve, of $123.65, being the amount of the principal sum due upon the two chattel mortgages, with interest computed to the date of the tender, and $2.70 costs of seizure.

It is proper to remark, in passing, that it is doubtful whether, under the circumstances under which this property was seized, it was incumbent upon the mortgagor to tender any costs for the seizure. The defendants first caused the property to be seized on execution, and it appears to have been with some difficulty that the plaintiff's agent was able to ascertain under what claim they were holding the property at the time the tender was made. Under such circumstances, it would have, at least, been a question for the jury as to whether they were acting in good faith, and were entitled to exact their costs.

Each of the mortgages contained a power of sale, which reads as follows:

"If default be made in such payment, the said Mary J. Roberts is hereby authorized to and shall sell at public or private sale the goods, chattels, and personal property hereinbefore mentioned, or so much thereof as may be necessary to satisfy the said debt, interest, and reasonable expenses, and to retain the same out of the proceeds of such sale; the surplus or residue, if any, to belong and to be returned to Myron Shattuck."

This mortgage also contained an insecurity clause, which provided that—

"The mortgagee is hereby authorized, at any time when she shall deem herself insecure, * * * then and from thenceforth it shall and may be lawful for the said party of the second part, her executors, administrators, or assigns, or her or their authorized agent, to enter upon the premises of the said party of the first part, or any place or places where the said

goods and chattels, or any part thereof, may be, and take possession thereof, and dispose of the same in the manner above specified."

The trial judge instructed the jury that, if the defendants deemed themselves insecure, they had the right to take possession of this property under this insecurity clause, and further instructed the jury that if Anderson did, in behalf of Shattuck, on the morning of December 15, 1890, tender to Loomis and Lull, or to either of them, the amount due at that time as payment of the debt secured by the mortgages, namely, $120, interest at 10 per cent. up to that time, and the costs that had accrued on the foreclosure proceedings commenced, and such amount was refused by Loomis and Lull, then the lien of the mortgages which they held upon that property was discharged, and the further detention would be unlawful.

It is claimed by defendants that the debt was not yet due by its terms, and that, if the mortgagor sought to discharge the mortgage, he would, at least, be obliged to tender the amount of the mortgage, with interest to the date of maturity. To admit this contention would be to hold that, in order to release the property, Shattuck would have had to pay the whole amount of the debt, and interest upon a debt that he did not owe, and had paid, for about 10 months. Under this rule it would be for the interest of the mortgagee to deem himself insecure at once, and thus force the debtor, in order to save his property, to pay back the money he had borrowed, and the interest upon it for the time stated in the mortgage, even if it was for five years.

We do not think the mortgage should be so construed. There can be no doubt of the mortgagor's right to redeem upon paying what the mortgagee would be entitled to realize and retain on a sale. Under the terms of this

mortgage, this sum is the "debt aforesaid, with interest and expenses;" and, if he proceeds under the insecurity clause, he is to dispose of the property "as above specified," and this very clearly includes the application of the proceeds of the sale. The circuit judge was right.

It is claimed that the tender which was made by Anderson was not shown to have been made on behalf of the plaintiff, or was not so understood by the parties. But the circuit judge properly left that question to the jury. In his charge he said:

"The jury must determine from what was said and done as to what the intention of the parties was. If you should find that what was said and done there on that occasion by Anderson was in his own behalf, and was not in behalf of the plaintiff, as I have already stated, then the tender would not avail the plaintiff anything; if otherwise, good. But if you find that he was acting in behalf of the plaintiff, made the tender for him, and you determine from what was said and done that the object and the information that he conveyed to the defendants was sufficient to apprise them of his purpose,—that is, to discharge the mortgages for and on behalf of the plaintiff,—then that was sufficient."

This instruction was sufficiently favorable to the defendants.

A careful examination of the record discloses no prejudicial error, and the judgment will be affirmed, with costs.

The other Justices concurred.